**GOVERNMENT EMPLOYEES INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Alexander DIZOL, Special Administrator of the Estate of Kevin Tate Dizol, Deceased, Defendant–Appellant.**

No. 95–17393.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1996.

Decided Feb. 28, 1997.

James Ireijo, Hilo, Hawaii, for defendant-appellant.

Carleton B. Reid, Reid, Richards & Miyagi, Honolulu, Hawaii, for plaintiff-appellee.

Before WALLACE, SCHROEDER, and ALARCON, Circuit Judges.

Opinion by Judge ALARCON; Dissent by Judge SCHROEDER.

ALARCON, Circuit Judge.

Alexander Dizol, as special administrator of the estate of Kevin Tate Dizol (the "Dizol Estate"), appeals from the district court's grant of summary judgment in favor of Government Employees Insurance Company ("GEICO"). GEICO filed an action in this matter pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration that it was not liable to the Dizol Estate as a beneficiary of an underinsured motorist's policy. At the time this federal action was filed, an action was pending in state court between the Dizol Estate and the alleged tort-feasors.

In its order granting summary judgment on the merits of GEICO's claim, the district court made no reference to the pending state

court proceeding, or that it had the discretion to decline to exercise its jurisdiction under the Declaratory Judgment Act. The district court did not point to any facts or circumstances that warranted the assertion of its discretionary jurisdiction to reach the merits of GEICO's novel state law question.

We must decide whether, pursuant to controlling case law, we should vacate the judgment, without reaching the merits of this appeal, and remand this matter to the district court with directions that it consider whether this case presents circumstances that make it an appropriate case for the exercise of its discretionary jurisdiction under the Declaratory Judgment Act. As we explain below, we conclude that we must vacate and remand with directions, because the district court failed to indicate that it had considered, among all the other relevant factors, whether it is clear, under Hawaii law, that GEICO could not have obtained a resolution of its novel state law issues in the tort law proceeding that was pending in state court at the time the complaint for declaratory relief was filed, or in a separate action for a declaration under Hawaii law.

**I**

This action arises from a single-car collision in which the driver of the vehicle, Vernell Adams, and his passenger, Kevin Tate Dizol, were killed on September 14, 1991. Adams had consumed alcoholic beverages at the Highlands Bar & Grill ("Highlands Bar") immediately prior to the accident. The Dizol Estate filed separate actions in Hawaii state court seeking damages for tort liability against the estate of Vernell Adams in 1991, and against Highlands Bar in 1993. These actions were later consolidated (the "state court tort action").

The vehicle driven by Adams was insured by the Fireman's Fire Insurance Company of Hawaii ("FFIC"). The liability limit on the

FFIC policy was $35,000. Kevin Dizol had an underinsured motorist policy issued by USAA Insurance Company ("USAA") in the amount of $35,000. The policy at issue in the federal declaratory judgment action was issued by GEICO to Dizol's brother. This underinsured motorist policy had a face value of $70,000.[1]

The Dizol Estate first notified GEICO of the pending state court actions in a letter dated August 12, 1994. The Dizol Estate demanded coverage under the insurance policy issued by GEICO. In a December 1, 1994 telephone conversation between counsel for GEICO and the Dizol Estate, GEICO's counsel was informed that the Dizol Estate had settled with Highlands Bar for $255,000. This amount is less than the policy limits. Highlands Bar was released from any further liability.

In a letter dated December 2, 1994, the Dizol Estate confirmed that it had accepted $15,000 in no-fault benefits; $255,000 from Highlands Bar; and would soon receive $35,000 from FFIC on behalf of Adams. The letter also notified GEICO that the Dizol Estate had released Highlands Bar and FFIC from any further liability, and had obtained leave of the state court to release Adams's estate. In addition to these payments, the record reveals that the Dizol Estate received $35,000 from Kevin Dizol's underinsurance policy with USAA.

On December 29, 1994, GEICO filed a complaint in the district court in this diversity action for a declaration under the Declaratory Judgment Act that the Dizol Estate had violated various provisions of the underinsurance policy. GEICO moved for summary judgment on the ground that it was not liable under the policy because the Dizol Estate violated the consent to settlement provision,[2] by settling the state court claims without first notifying GEICO; the exhaustion provi-

---

1. Highlands Bar was insured for dram shop liability by FFIC. The face value of this policy does not appear in the record.

2. The underinsurance policy provides under the caption "Exclusions" that:

This coverage does not apply to *bodily injury* to an *insured* if the *insured* or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent.
(E.R. 18 Ex. H–3 (emphasis in original).)

sion,[3] by settling with Highlands Bar for less than the total coverage available under the FFIC policy; and the notice requirement,[4] by failing to notify GEICO of the accident until over three years after its occurrence, and by failing to provide timely copies of the pleadings filed in the state court actions. Alternatively, GEICO contended that any amount payable to the Dizol Estate under the underinsurance policy should be offset by the $35,000 policy limits received on behalf of Adams's estate, and the full amount of the policy coverage available to Highlands Bar. Finally, GEICO claimed that the Dizol Estate's claim was barred by the statute of limitations.

The district court granted summary judgment in favor of GEICO. The court held that the claim of Dizol's Estate was not barred by the statute of limitations, but GEICO was not liable because the Dizol Estate violated the consent to settlement condition of the policy.

Neither party made any reference before the district court to the fact that the court's jurisdiction under the Declaratory Judgment Act was discretionary, nor did they point to any special circumstances in this case that weighed in favor of reaching the merits of GEICO's contentions. Thus, the parties did not inform the district court that it had to decide whether it should exercise its discretion to grant a declaration in view of the fact that a related proceeding was pending in state court at the time this action was filed. The district court's written order makes no reference to the discretionary nature of its jurisdiction. This issue was not discussed by either party in the initial briefs filed before this court.

On September 20, 1996, we directed the parties to file supplemental briefs "address-

ing the question whether the district court properly exercised jurisdiction over a request for a declaratory judgment that raises only questions of state law and was brought during the pendency of a related state court proceeding, and, if not, whether the court should remand with directions to dismiss the complaint."

In its response to our request, the Dizol Estate urged us to vacate the judgment of the district court and remand with instructions to dismiss. The Dizol Estate argued that this action presents novel state law issues that should have been resolved in the state court tort action that was pending at the time this action was filed in the district court. Finally, the Dizol Estate asserts that there is no evidence in the present record of any circumstances that warrant the district court's exercise of its discretionary jurisdiction.

GEICO urges us to affirm because the underlying state court tort action was settled prior to the filing of this matter in the district court on December 29, 1994. GEICO argues that although the state court action was not dismissed until April 24, 1995, "[p]ractically, no 'pending' state action existed at the time GEICO filed its declaratory relief action in federal district court on December 29, 1994." GEICO also asserts that the action was not parallel because the state court dispute did not arise out of the same factual transaction or occurrence. GEICO points out that the state action concerned the tort liability of the driver of the car and the establishment that had served him alcohol, while the matter before this court involves the question whether GEICO is contractually liable to a beneficiary of the policy, in view of the fact that the Dizol Estate allegedly failed to give proper notice of the proposed settle-

---

**3.** The underinsurance policy provided coverage for:

> damages an *insured* is legally entitled to recover for *bodily injury* caused by the accident and arising out of the ownership, maintenance or use of an *underinsured motor vehicle*. However, we will not pay until the total of all bodily injury liability insurance available has been exhausted by payment of judgments or settlements.

(E.R. Ex. H–3 (emphasis in original).)

**4.** As a condition of coverage "[a]s soon as possible after an accident," GEICO must be provided the identity of the insured, the details of the accident, and the identification of any witnesses. (E.R. 16 Ex. H–5.) Further, the insured must supply GEICO copies of the pleadings upon instituting suit. (*Id.*) Once GEICO receives this information, it "may require the *insured* to take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization." (*Id.*)

ment, and did not obtain GEICO's consent to settle.

## II

Before we can review the merits of this appeal, we must decide if the district court should have considered abstaining from the exercise of its discretionary jurisdiction to issue a declaration in light of all the relevant factors, including the remedies available under Hawaii law at the time this action was filed.

Prior to 1934, an insurance company, involved in a dispute with its insured over coverage, could not invoke the jurisdiction of a federal district court by filing an action to seek a judicial declaration of its liability under the policy. Instead, an insurance company was required to wait until the insured filed an action for breach of contract. If the *insured* filed in state court, the insurance company could remove the action to federal court if the parties were diverse and the matter in controversy exceeded the jurisdictional amount. If, however, the insured delayed the filing of an action in state or federal court for a protracted period of time, the insurance company risked losing "the benefit of evidence through disappearance, illness, or death of witnesses." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937). In addition, the insurance company was compelled to maintain reserves indefinitely to cover its potential liability until the dispute was resolved in a court action. *Id.*

The enactment of the Declaratory Judgment Act of 1934, Pub.L. No. 73–512, 48 Stat. 955 (codified as amended at 28 U.S.C. §§ 2201–2202) has provided a remedy for a litigant faced with this dilemma. An insurance company, or any party faced with the threat of legal action over a disputed claim, can now file an action in federal court requesting a declaration of the rights and obligations of the parties, provided there exists an independent jurisdictional basis, *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950), without having to wait for the other party to file an action for damages or an injunction.

In its present form, the Declaratory Judgment Act provides in relevant part:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added).

Professors Wright and Miller have described the goal of the Declaratory Judgment Act as follows: "[It] is intended to minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until his adversary should see fit to begin an action after the damage has accrued." 10A Charles Alan Wright *et al., Federal Practice and Procedure* § 2751, at 569 (2d ed. 1983).

In *Haworth,* the Court held that the use of the term "actual controversy" in the Declaratory Judgment Act does not require that a dispute between the parties has ripened to the point that a party previously filed an action for damages or injunctive relief. A district court may grant relief in an action filed under the Declaratory Judgment Act if there is "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Haworth*, 300 U.S. at 241, 57 S.Ct. at 464.

The district court in *Haworth* dismissed the complaint on jurisdictional grounds. *Id.* at 236, 57 S.Ct. at 462. The Supreme Court reversed, holding that there was a definite and concrete "dispute relat[ing] to legal rights and obligations arising from the contracts of insurance." *Id.* at 242, 57 S.Ct. at 464.

In *Haworth*, the district court denied relief under the Declaratory Judgment Act because it erroneously concluded it lacked the jurisdiction to assert its judicial power. The les-

son of *Haworth* is that a district court has the *jurisdiction* to exercise its discretion to grant declaratory relief, although no action is pending in state court that offers a forum for the resolution of the parties' dispute over coverage.[5]

## A

In *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), the Supreme Court addressed the discretion granted the district courts by the Declaratory Judgment Act to decline to exercise their jurisdiction over cases otherwise properly within their subject matter jurisdiction.[6] The district court in *Brillhart* dismissed an action filed by an insurance company under the Declaratory Judgment Act because related proceedings were pending in state court. The district court did not indicate in its order whether the issue presented in the declaratory relief action could have been raised by the plaintiff insurance company in the pending state court proceeding. The Tenth Circuit reversed with directions that the trial court proceed to a trial on the merits. *Id.* at 493–94, 62 S.Ct. at 1174–75.

The Supreme Court began its analysis by pointing out that, "[a]lthough the district court had jurisdiction of the suit under the Federal Declaratory Judgment[ ] Act, it was under no compulsion to exercise that jurisdiction." *Id.* at 494, 62 S.Ct. at 1175. The Court next observed that

> [o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same

parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided. *Id.* at 495, 62 S.Ct. at 1175–76.

The Court reversed the judgment of the Tenth Circuit and directed it to remand the matter to the district court with directions that the trial judge determine "whether, under applicable local law, the claims sought to be adjudicated by the respondent in this suit for a declaratory judgment had either been foreclosed by Missouri law or could adequately be tested in the garnishment proceeding pending in the Missouri state court." *Id.* at 495–96, 62 S.Ct. at 1176. In sum, to comply with *Brillhart*, before exercising its jurisdiction under the Declaratory Judgment Act, a district court must determine whether there is another action pending in state court between the same parties, or, if not, whether state law forecloses the presentation of the federal plaintiff's claims in that forum.

In *Wilton v. Seven Falls Co.*, —— U.S. ——, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995), the Supreme Court reaffirmed the discretionary standard it announced in *Brillhart*. *Id.* at ——  ——, 115 S.Ct. at 2140–43. In *Wilton*, the district court issued a stay of the declaratory judgment action pending the determination of parallel proceedings in state court. The Fifth Circuit affirmed. *Id.* at ——  ——, 115 S.Ct. at 2139–40.

The Court in *Wilton* rejected the argument that under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), a district court must

---

**5.** There is no indication whether a Missouri law provided for the remedy of declaratory relief on the date the insurance company filed its complaint in federal court in the *Haworth* matter. Because the district court concluded that no controversy existed in an action filed under the Declaratory Judgment Act unless the insured has initiated a breach of contract action, it did not examine the question whether declaratory relief was available under Missouri law. *Aetna Life Ins. Co. of Hartford v. Haworth*, 11 F.Supp. 1016, 1017–18 (W.D.Mo.1935).

Our research has disclosed that Missouri adopted a statute permitting an action for declar-

atory relief on June 22, 1935. Walter Freedman, *Declaratory Judgments with Recent Missouri Developments*, 43 St. Louis U.L.J. 49, 49 (1937). The published decisions of the district court, the Fifth Circuit, and the Supreme Court do not disclose the date Aetna filed the federal declaratory judgment action. The district court rendered its decision on August 22, 1935.

**6.** It is undisputed in this case that the citizenship of GEICO and the Dizol Estate is diverse, and the amount in controversy exceeds $50,000.

exercise the discretionary jurisdiction conferred on it by Congress in the Declaratory Judgment Act where there is a parallel state action, in the absence of evidence of exceptional circumstances that would warrant abstention. *Wilton,* —— U.S. at ——–——, 115 S.Ct. at 2140–41.

The Court held that the "[d]istinct features of the Declaratory Judgment Act ... justify a standard vesting district courts with greater discretion in declaratory judgment actions than permitted under the 'exceptional circumstances' test of *Colorado River* and *Moses H. Cone.*" *Wilton,* —— U.S. at ——, 115 S.Ct. at 2142. In support of this proposition, the Court commented as follows: "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* In a later passage, the Court stated, "[w]e have repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Id.* at ——, 115 S.Ct. at 2143 (quoting *Public Serv. Comm'n v. Wycoff Co.,* 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952)).

The Court concluded its discussion of the district court's discretionary authority in *Wilton* with these words:

> Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction

yields to considerations of practicality and wise judicial administration.

*Id.* at ——, 115 S.Ct. at 2143.

## B

Application of the *Brillhart* interpretation of the Declaratory Judgment Act to this matter is complicated by the failure of the parties to recognize that the district court's jurisdiction is discretionary. For that reason the record is silent regarding whether there are any circumstances that weigh in favor of, or are contrary to, the exercise of the district court's discretionary jurisdiction in this case.

It is undisputed that on the date GEICO's complaint was filed in federal court, an action was pending in state court among the Dizol Estate, the estate of Adams, and Highlands Bar concerning the extent of the damages that should be awarded if Vernell Adams's negligence caused Kevin Dizol's death. The parties did not inform the district court, and the record does not disclose, whether under Hawaii law GEICO could have, or should have, been joined as a party, or could have attempted to intervene in the state court proceedings to protect its interest in avoiding or limiting its liability under its underinsurance policy. The district court also failed to indicate whether, under these circumstances, the interests of comity and sound judicial administration would be better served if GEICO had filed for declaratory relief in a Hawaii court pursuant to Haw.Rev.Stat. § 632–1.[7]

The Supreme Court made clear fifty-four years ago in *Brillhart* that the question whether an adequate remedy exists in the state court for the federal plaintiff is "a matter for determination, certainly in the

---

7. Section 632–1 provides, in pertinent part:

In cases of actual controversy, courts of record, within the scope of their respective jurisdictions, shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed....

Relief by declaratory judgment may be granted in civil cases where an actual controversy exists between contending parties, or where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which the party has a concrete interest and that there is a challenge or denial of the asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding.

first instance, by the District Court." *Brillhart*, 316 U.S. at 496, 62 S.Ct. at 1176.

> The Court explained its holding as follows: If the lower courts had found that under Missouri law the respondent's claims could not adequately be tested in the pending garnishment proceeding, or that Missouri law on the subject was doubtful, and upon the basis of such a finding had taken jurisdiction of this suit for a declaratory judgment, we would not disturb such a finding. But no such finding can be extracted from this record. And *it is not for us to attempt to pronounce independently upon Missouri law. To do so would be to disregard the limitations inherent in our appellate jurisdiction.*

*Id.* at 496–97, 62 S.Ct. at 1176 (emphasis added).

■ Under *Brillhart*, a district court must, therefore, consider, in the first instance, whether the issues raised in an action filed under the Declaratory Judgment Act can be resolved between the parties in a pending state court action. Failure of the district court to perform this essentially fact finding function may lead to a time consuming, vexatious, and unnecessary determination of the merits of unresolved state law issues.

■ The Supreme Court has yet to address the problem presented in this case: What is the appropriate response by an appellate court when the district court fails to conduct the inquiry mandated by *Brillhart* before exercising its discretionary jurisdiction under the Declaratory Judgment Act? As discussed above, in *Brillhart*, the district court summarily dismissed a federal declaratory judgment action because an action was pending in the state court involving the same issues. *Id.* at 493–94, 62 S.Ct. at 1174–75. In *Wilton*, the district court granted a stay, without issuing a declaration, because the pending state action "encompassed the same coverage issues." *Wilton*, — U.S. at —, 115 S.Ct. at 2139.

We faced this precise question in *American Nat'l Fire Ins. Co. v. Hungerford*, 53 F.3d 1012 (9th Cir.1995). In *Hungerford*, the district court granted summary judgment in favor of the plaintiff insurance company in its dispute with its insured over liability under an insurance policy. *Id.* at 1013–14. The district court "did not refer to the discretionary nature of its jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201." *Id.* at 1014.

We held in *Hungerford* that the fact that "[t]he record does not indicate why the district court decided to exercise its jurisdiction .... does not prevent us from considering the issue." *Id.* at 1015. We reasoned that we could exercise our own discretion in determining the propriety of the district court's grant of declaratory relief because, under the law of this circuit, we reviewed *de novo* a district court's exercise of jurisdiction under the Declaratory Judgment Act when a state action is pending. *Id.* After independently reviewing the record, we concluded that the district court erred in reaching the merits because there were "no compelling justifications" for granting declaratory relief during the pendency of a concurrent related state court proceeding and the availability of a state procedure for obtaining a declaration. *Id.* at 1016–19 (citing *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 278–79 (6th Cir.1990)). We vacated the district court's judgment in *Hungerford* and remanded with directions to dismiss the action. *Id.* at 1019.

Our decision in *Hungerford* was filed on April 27, 1995. A few weeks later, on June 12, 1995, the Supreme Court resolved "the question whether discretion to entertain declaratory judgment actions is vested in district courts alone or in the entire judicial system." *Wilton*, — U.S. at —, 115 S.Ct. at 2143. The Court held that the district court's decision to grant or to refrain from granting declaratory relief must be reviewed for abuse of discretion. The Court rejected the "invitation" to adopt a *de novo* standard of review. *Id.* at — – —, 115 S.Ct. at 2143–44. The Court stated: "We believe it is more consistent with the statute to vest district courts with discretion *in the first instance,* because facts bearing on the usefulness of the declaratory judgment remedy, and fitness of the case for resolution, are peculiarly within their grasp." *Id.* at —, 115 S.Ct. at 2144 (emphasis added). Thus,

the Supreme Court has implicitly overruled this circuit's reliance in *Hungerford* on the *de novo* standard in reviewing orders granting or denying declaratory relief.

In *Employers Reinsurance Corp. v. Karussos*, 65 F.3d 796 (9th Cir.1995), we vacated a grant of summary judgment with instructions to the district court to dismiss the action because related proceedings were pending in state court. *Id.* at 801. *Karussos* was argued and submitted on June 9, 1995, three days before the Supreme Court decided *Wilton*. In *Karussos*, an insurance company filed an action under the Declaratory Judgment Act against another insurance company seeking a declaration *inter alia* that the defendant had a duty to join in defending Karussos in a state court action. *Karussos*, 65 F.3d at 798. The district court entered summary judgment on the merits in favor of the defendant insurance company, declaring that it had no duty to defend Karussos. *Id.* As in this matter, "the district court [in *Karussos*] did not address the jurisdictional question before proceeding to decide the merits, and does not appear even to have considered it." *Id.* at 799.

We recognized in *Karussos* the Court's instruction in *Wilton* that "the district court is generally entitled to exercise its jurisdiction 'in the first instance' because those facts that 'bear[ ] on the usefulness of the declaratory judgment remedy' as well as the 'fitness of the case for resolution' may be 'peculiarly within [its] grasp.' " *Id.* (quoting *Wilton*, —— U.S. at ——, 115 S.Ct. at 2144). We held in *Karussos*, however, that the failure of the district court to address the jurisdictional question did not require us automatically to remand for a determination whether circumstances are present to overcome the general rule that "the action belongs in state rather than federal court." *Id.*

■ In *Karussos*, the parties jointly argued to this court that we should review the merits of the appeal, rather than vacating the judgment, because the record disclosed circumstances that supported the district court's exercise of its discretionary jurisdiction. *Karussos*, 65 F.3d at 799–801. We rejected this suggestion because "the parties have pointed to no facts or circumstances which would make the exercise of federal court jurisdiction appropriate." *Id.* at 799. Accordingly, under the law of this circuit as announced in *Karussos*, we will not remand an action filed under the Declaratory Judgment Act to the district court with directions to consider whether the exercise of jurisdiction is proper where there are no facts or circumstances appearing in the record that would permit the district court to exercise its discretionary jurisdiction. We reasoned in *Karussos* that a remand under such circumstances "would be futile and would only frustrate the interest in judicial economy we identified in *Hungerford*." *Id.* Because we disagreed with both parties' assertion that the district court did not abuse its discretion, we vacated the district court's decision on the merits in *Karussos*, and directed the district court to dismiss the action. *Id.* at 801.

The *Karussos* exception to the *Wilton* rule is inapplicable here. Unlike the circumstances in *Karussos*, in this case there are "facts and circumstances that could justify [the] district court's discretionary decision to exercise its jurisdiction" so that "a remand would not constitute an exercise in futility." *Karussos*, 65 F.3d at 799–800 n. 1.

In another post-*Wilton* decision, we were again confronted with an action filed under the Declaratory Judgment Act in which the district court decided the merits without indicating that it had considered whether it was an appropriate case to exercise its jurisdiction to issue a declaration. *Golden Eagle Ins. Co. v. Travelers Cos.*, 95 F.3d 807, 810–11 (9th Cir.1996). As in *Karussos*, the parties in *Golden Eagle* jointly urged this court to reach the merits of the appeal without remanding this matter to the district court "to permit that court to exercise its discretion to decide whether to hear it." *Golden Eagle*, 95 F.3d at 811. We noted in *Golden Eagle* that, "[w]hen the district court offers no indication that it even considered the issue, and it is not clear that the exercise of jurisdiction is necessarily improper, the proper course is usually for this court to remand the matter to the district court." *Id.* at 810–11 (citing *Karussos*, 65 F.3d at 799 n. 1.)

We held in *Golden Eagle* that the district court erred in issuing a declaration on the

merits because it was clear under the law of the circuit that a district court should abstain from exercising its jurisdiction when there is a pending state court proceeding arising out of the same factual circumstances. *Id.* at 812. Accordingly, we concluded that it would be futile to remand the matter to the district court because "the parties have failed to point to any circumstance which would support the district court's exercise of discretion to hear this case." *Id.* at 811.

■ Here, unlike the circumstances in *Karussos* and *Golden Eagle*, it is not clear that the exercise of its jurisdiction by the district court was necessarily improper. There is a genuine dispute regarding whether the state court tort action was still pending in view of the fact the parties had executed a settlement agreement before the federal action was filed. Under such circumstances, the Supreme Court's decision in *Wilton* compels us to remand this matter to the district court. *Golden Eagle*, 95 F.3d at 810–11.

■ In *Golden Eagle*, we held that the district court's error in exercising jurisdiction was harmless error because the "court properly applied the relevant state law to the undisputed material facts and came up with the right answer." *Id.* at 812. In this matter, the validity of the consent-to-settle provision and the exhaustion condition in GEICO's insurance policy are unsettled legal issues under Hawaii law, and we are not "convinced" that "[w]ere the parties to proceed anew in state court . . . they would get the same decision." *Id.* Therefore, the court's exercise of its jurisdiction under the Declaratory Judgment Act cannot be viewed as harmless error.

Because the dissent has chosen this case as a vehicle to challenge the law of this circuit, we believe a measured response is appropriate. The dissent concludes that "the district court did not err when it assumed jurisdiction of this declaratory judgment action." Dissent at 1012. After conducting an independent review of the record, the dissent finds that all of the "factors militate in favor of the exercise of jurisdiction." Dissent at 1014. The dissent also appears to espouse the view that it is unnecessary for a district court to make findings regarding the circum-

stances that support the exercise of the court's discretion in the absence of an express request by the parties that it do so. Dissent at 1013. In the absence of any findings by the district court that the exercise of its discretionary jurisdiction would be appropriate under the circumstances, the dissent suggests that we must hold that a district court does not abuse its discretion where "both parties were willing to have the district court decide the case." Dissent at 1014. This presumption of correctness is contrary to the principle announced by the Supreme Court in *Wilton* that a district court's exercise of its jurisdiction under the Declaratory Judgment Act must be reviewed for an abuse of discretion.

The dissent argues that "[t]he majority's holding, that *the district court must now consider whether it should have assumed jurisdiction in the first place*, takes our court another step along the wrong road." Dissent at 1012–13 (emphasis added). Our conclusion that a district court must decide *in the first instance* whether the relevant factors demonstrate the fitness of this case for resolution under the Declaratory Judgment Act is mandated by our duty to adhere to the supreme law of the land as interpreted by the United States Supreme Court. In *Wilton*, the Court instructed that a district court must determine *"in the first instance"* whether "facts bearing on the usefulness of the declaratory judgment remedy" have been demonstrated. *Wilton*, —— U.S. at ——, 115 S.Ct. at 2144 (emphasis added). Thus, the dissent has chosen the wrong target for its criticism of the principle that the district court must find "in the first place" whether a particular claim for declaratory relief is appropriate for the exercise of its discretionary jurisdiction. In remanding for the district court to make this determination we are following the clear command of the Supreme Court in *Wilton*.

The dissent's analysis begins with the observation that "the federal courts' declaratory judgment jurisdiction has been invoked in insurance litigation more often than in any other area, with the possible exception of patent litigation." Dissent at 1012 (citing Charles Alan Wright, *Federal Courts* § 100,

at 715 (5th ed. 1994)). Patent law is within the exclusive jurisdiction of the federal courts. 28 U.S.C. § 1338(a). Thus, there can be no clash of conflicting interpretations of patent law between federal and state courts. On the other hand, the issuance of a declaration by a federal district court in a diversity action concerning an unsettled question of state law may not only be an erroneous forecast, it may also violate federalism concerns by needlessly interfering in the development of local jurisprudence. To avoid this conflict, the Court stated in *Wilton* that "a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment" in diversity actions. *Wilton*, —— U.S. at ——, 115 S.Ct. at 2143. The failure to recognize the sharp distinction between federal court jurisdiction over patent law cases, and diversity actions seeking a declaration of purely state law questions, can lead one to a faulty analysis of the import of the Supreme Court's decisions in *Brillhart* and *Wilton*.

The dissent relies solely on the views expressed by Professor Borchard in his 1941 treatise to support the proposition that "the appropriateness of declaratory judgment jurisdiction can generally be assumed when a district court exercises such jurisdiction." Dissent at 1013. In fairness to Professor Borchard, it should be noted that his commentary was published one year *before* the Supreme Court issued its decision in *Brillhart*. Thus, he had no opportunity to consider the Court's interpretation of the discretionary nature of the district court's jurisdiction under the Declaratory Judgment Act. In a portion of his work not quoted by the dissent, Professor Borchard advocated *de novo* review of a district court's exercise of its jurisdiction under the Declaratory Judgment Act. Professor Borchard opined that an "appellate court in all cases must exercise its own judgment on the propriety of the refusal or grant and *not rely on the judgment of the trial court.*" Edwin Borchard, *Declaratory Judgments* 293 (2d ed. 1941) (emphasis added). Under the *de novo* standard of review suggested by Professor Borchard, a district court's findings would be irrelevant to an appellate court's determination

whether a case was fit for the exercise of jurisdiction under the Declaratory Judgment Act.

Professor Borchard's view that an appellate court cannot "rely on the judgment of the trial court" in reviewing the exercise of a district court's discretionary jurisdiction was not adopted by the Court in *Brillhart*. The Court stated that it would not have disturbed a finding by the district court that the insurance company's claims could not be resolved in a proceeding pending in state court. It then noted, "[b]ut no such finding can be extracted from this record." *Brillhart*, 316 U.S. at 497, 62 S.Ct. at 1176. The Court declined to make an independent determination of this question on the ground that making factual findings is not an appropriate appellate function. *Id.*

The Court spelled out the district court's duty as follows:

Where a District Court is presented with a claim such as was made here, it should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can be better settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.

*Id.* at 495, 62 S.Ct. at 1176.

Contrary to the view expressed by the dissent, this inquiry must be made whenever "a district court is presented with a claim" for declaratory relief, *not* just in those cases where one of the parties is unwilling to have the court exercise its discretionary jurisdiction. The dissent's suggestion that a district court is not required to determine whether it should exercise its discretionary jurisdiction is contrary to the well-settled principle that a district court has "the authority of a federal court to abstain from exercising its jurisdic-

tion [in] all cases in which the court has the discretion to grant or deny relief." *Morrow v. Winslow,* 94 F.3d 1386, 1391 (10th Cir. 1996) (citing *Quackenbush v. Allstate Ins. Co.,* —— U.S. ——, ——, 116 S.Ct. 1712, 1722, 135 L.Ed.2d 1 (emphasis omitted)).

In 1995, the Supreme Court expressly rejected Professor Borchard's suggestion that a district court's exercise of its discretionary jurisdiction should be reviewed without relying on the judgment of the trial court. In adopting the abuse of discretion standard of review, the court reasoned as follows:

> While it may be true that sound administration of the Declaratory Judgment Act calls for the exercise of "judicial discretion, hardened by experience into rule," Borchard, *Declaratory Judgments,* at 293, proper application of the abuse of discretion standard on appellate review can, we think, provide appropriate guidance to district courts.

*Wilton,* —— U.S. at ——, 115 S.Ct. at 2144.

In sum, we disagree with our dissenting colleague that we must assume that a district court properly considered the relevant factors whenever it reaches the merits of the dispute in an action for declaratory relief. To comply with *Brillhart* and *Wilton,* a district court must, in the first place, make findings regarding the presence or absence of the circumstances that caused it to exercise its discretion in favor of issuing a declaration. An appellate court cannot perform its responsibility under *Wilton* to review for abuse of discretion, or to provide proper guidance to district courts, where the record contains no findings that support a trial court's decision to reach the merits.

While the notion that we should assume that the district court has sound reasons for the exercise of its discretion may have a seductive appeal to an appellate court that has a rising caseload and is woefully understaffed, we cannot abdicate our responsibility

to determine whether the district court abused its discretion in exercising its jurisdiction under the Declaratory Judgment Act in diversity actions.

The dissent is quite correct in noting that Rule 57 of the Federal Rules of Civil Procedure provides that the availability of a state court remedy " 'does not preclude a judgment for declaratory relief' . . . ." Dissent at 1013 (quoting Fed.R.Civ.P. 57). Omitted from the dissent's quotation of Rule 57, however, are the significant words "in cases where it is appropriate." [8] Fed.R.Civ.P. 57. Thus, Rule 57 leaves it to the discretion of the district court to determine whether granting declaratory relief where there is an adequate state remedy would be "appropriate" after weighing the pertinent circumstances. Our holding in this case merely reflects *Wilton*'s command that the appropriateness determination required by Rule 57 must be made by the district court in the first instance. Further, *Brillhart* and *Wilton* make clear, consistent with Rule 57, that the existence of a state remedy is a relevant factor that must be weighed by the district court in determining whether it should abstain from reaching the merits in a diversity action seeking a declaratory judgment in the interest of "practicality and wise judicial administration." *Wilton,* —— U.S. at ——, 115 S.Ct. at 2143.

We do not hold that a district court must always abstain if the insurance company has an adequate remedy under state law. Our holding is simply that, to comply with *Brillhart, Wilton,* and Rule 57, a district court must find, in the first instance, whether the facts support the exercise of its discretionary jurisdiction. *Wilton* teaches us that we cannot make that determination independently where a district court fails to make findings to support the exercise of its discretion. —— U.S. at ——, 115 S.Ct. at 2144. We cannot at this late date turn back the clock to Professor Borchard's 1941 vision of the duty of

---

**8.** The complete text of Rule 57 provides:

> The procedure for obtaining a declaratory judgment pursuant to Title 28, U.S.C. § 2201, shall be in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39. *The existence of*

> *another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate.* The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar. Fed.R.Civ.P. 57 (emphasis added).

an appellate court in reviewing a diversity action for declaratory relief without defying our nation's highest court.

We summarize our holding in this matter as follows. We will vacate a district court's decision on the merits in a diversity action filed under the Declaratory Judgment Act with instructions to consider whether the facts demonstrate that the exercise of its discretionary jurisdiction is appropriate when the following factors appear in the record:

One. The district court has failed to indicate the basis for the exercise of its discretionary jurisdiction;

Two. At the time the declaratory relief action is filed in federal court, a proceeding arising out of the same transaction is pending in state court;

Three. It is not clear whether the plaintiff can seek resolution of the state law issue in the pending state court proceeding, or whether an action for declaratory relief could have been filed in state court; and

Four. We are not convinced that a state court would reach the same result on the merits of the state law issues.

### III

Having determined that we must vacate the district court's decision on the merits, we next proceed to consider the responsibility of a district court, faced with a request for a declaration, when a proceeding is pending in state court involving facts that bear upon the declaration sought in the federal action. In *Brillhart,* the Supreme Court held that where it is claimed that "another proceeding [is] pending in a state court in which all matters in controversy between the parties could be fully adjudicated," *Brillhart,* 316 U.S. at 495, 62 S.Ct. at 1175, the district court should inquire into the scope of the state court action, to determine whether "the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." *Id.* The Court did not "attempt a comprehensive enumeration of what in other cases may be revealed as relevant factors governing the exercise of

a District Court's discretion." *Id.* The Court did not set forth other procedural vehicles that may enable a party to obtain state court review of the federal plaintiff's claims such as intervention, or the filing of a separate action for declaratory relief if such remedy is available under state law.

■ Under the law of this circuit, the fact that there are differences in the factual issues before the state and federal courts, or that the federal plaintiff could not be a party to the state court action is not dispositive because the plaintiff "could have presented the issues it brought to federal court in a separate [declaratory relief] action to the same court that will decide the underlying tort action." *Karussos,* 65 F.3d at 800 (citations omitted). *See Mercier,* 913 F.2d at 278 (holding that it is an abuse of discretion for a district court to grant a declaration of liability for tort damages in a pending state court action where the plaintiff could have brought an action for declaratory relief under state law). Upon remand, the district court must weigh all of these factors in determining whether this is an appropriate case for the exercise of its discretionary jurisdiction under the Declaratory Judgment Act.

The district court must also consider in the first instance the legal effect under Hawaii law, if any, of the execution of a settlement agreement between the Dizol Estate and the tort-feasors on the pending state court proceeding. Other questions that were not addressed by the district court include the following: Does Hawaii law permit the joinder of an insurance company that has issued an underinsurance policy, prior to the dismissal of a tort action, where the tort-feasors insurance coverage may not cover the total amount of damages attributable to the tort-feasor's conduct? Does Hawaii law permit an insurance company to intervene after being notified of the settlement of a tort action that may affect its liability to the estate of the victim? Is there a procedure under Hawaii law for an insurance company to set aside the dismissal of a tort action if it was not joined as a party, where it did not receive proper notice of a proposed settlement, nor did it consent to the settlement as required by its underinsurance policy? *See, e.g., Shi-*

*mabuku v. Montgomery Elevator Co.*, 79 Hawai'i 352, 903 P.2d 48, 51, 55 (1995) (permitting an interested party to intervene to move to set aside a settlement agreement). Can an insurance company that has issued an underinsurance policy seek a declaration under Hawaii law of its liability following a settlement of the dispute?

Development of the record that would inform this court whether the issuance of a declaration was an abuse of discretion is the duty of the district court in the first instance. *See Brillhart*, 316 U.S. at 497–98, 62 S.Ct. at 1177 ("We are not concerned here with the burden of proof in establishing facts as to which only the parties to a private litigation are interested. We are concerned rather with the duty of the federal courts to determine legal issues governing the proper exercise of their jurisdiction.").

## CONCLUSION

We vacate the district court's decision on the merits because it is not clear to us from the present record if it considered whether GEICO could have presented its claims in a Hawaii court at the time this action was filed. The district court is directed to determine whether the circumstances of this case warrant the exercise of its jurisdiction to issue a decision on the merits in this matter. If the district court declines to exercise its jurisdiction because it concludes that GEICO can obtain a resolution in a Hawaii court of the novel state law issues presented in this action, it should consider issuing a stay, rather than dismissing this matter, so that "the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Wilton*, —— U.S. at —— n. 2, 115 S.Ct. at 2143 n. 2. If the district court concludes that this is an appropriate case for the exercise of its discretionary jurisdiction in this matter, the district court may re-enter the judgment previously issued in this matter. We express no view as to whether the district court correctly determined the merits of GEICO's claims.

VACATED and REMANDED with directions.

SCHROEDER, Circuit Judge, Dissenting:

I respectfully dissent from the majority's opinion that sends this case back to the district court. In my view, the district court did not err when it assumed jurisdiction of this declaratory judgment action. The underlying tort litigation had been settled, and no party even suggested to the district court that there was a better forum in which to resolve the last remaining issue in litigation that was already greatly protracted.

The majority's holding, that the district court must now consider whether it should have assumed jurisdiction in the first place, takes our court another step along the wrong road, and, contrary to the majority's contention, does not represent the "clear command of the Supreme Court in *Wilton*." Maj. Opinion at 1008 (citing *Wilton v. Seven Falls Co.*, —— U.S. ——, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)). Moreover, by continuing to reinforce in this circuit the presumption against federal jurisdiction in diversity insurance litigation, we continue to move away from Congress' objectives in both creating the Declaratory Judgment Act and maintaining the vitality of diversity jurisdiction.

The Declaratory Judgment Act, 22 U.S.C. §§ 2201 and 2202, was enacted in 1934. It was almost immediately implemented by Federal Rule of Civil Procedure 57. In the 60 years since the Rule's adoption, the federal courts' declaratory judgment jurisdiction has been invoked in insurance litigation more often than in any other area, with the possible exception of patent litigation. *See* Charles Alan Wright, *Federal Courts*, § 100 at 715 (5th ed. 1994). Thus, there has been routine invocation of declaratory judgment jurisdiction in diversity insurance cases at a level comparable to declaratory judgments in federal question patent cases. This history belies this circuit's view that federalism concerns require frequent abdication of federal jurisdiction in favor of state court resolution of insurance issues. Neither the statute nor the Rule requires us to do so. The Rule expressly provides that in the appropriate circumstances the "existence of another ade-

quate remedy does not preclude a judgment for declaratory relief...." Fed.R.Civ.P. 57.

In addition, there is certainly nothing in Supreme Court jurisprudence to warrant a presumption against the exercise of declaratory judgment jurisdiction in federal court. In fact, the Supreme Court's language in *Wilton*, that the "facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within [the district courts'] grasp[,]" appear to foreclose such a presumption. *Wilton*, —— U.S. at ——, 115 S.Ct. at 2144.

In *Brillhart* and *Wilton*, the Supreme Court did stress the discretionary nature of declaratory judgment jurisdiction, but those were cases in which the district court refused to exercise jurisdiction after one of the parties specifically asked the court to dismiss or stay the action because of the existence of a pending state action. In both cases, the Supreme Court held that district courts could exercise their discretion to decline jurisdiction, but only after carefully considering whether the same issues could have been litigated in the state court proceeding, and whether it would have been more appropriate to litigate them there. Thus, for example, the *Brillhart* Court held that when asked to decline jurisdiction, the district court must assess the "correctness" of the claim forming the basis of the motion to dismiss. The Court stated:

> The motion rested upon the claim that since another proceeding was pending in a state court in which all the matters in controversy between the parties could be fully adjudicated, a declaratory judgment in the federal court was unwarranted. The correctness of this claim was certainly relevant in determining whether the [d]istrict [c]ourt should assume jurisdiction and proceed to determine the rights of the parties....
>
> Where a district court is presented with a claim such as was made here, it should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the

state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.

*Brillhart*, 316 U.S. at 494–95, 62 S.Ct. at 1176. The requirement announced in *Brillhart* is inapplicable to a case like this, where no claim was ever made in the district court that the issues could and should be litigated in another proceeding.

Similarly, in its latest pronouncement on the issue, in *Wilton*, the Court again spoke only to the factors that courts must explicitly consider when faced with a claim that jurisdiction should be declined.

The absence of any Supreme Court insistence on express jurisdictional analysis in cases like this one, where jurisdiction is assumed rather than declined, is consistent with the history of federal declaratory judgment jurisdiction. The father of the federal Declaratory Judgment Act, Professor Borchard, pointed out more than 50 years ago that the appropriateness of declaratory judgment jurisdiction can generally be assumed when a district court exercises such jurisdiction. He stated that courts

> rarely indicate the special grounds upon which the court's discretion is exercised *in favor* of a declaratory judgment. When it is so exercised, it may be assumed first that all the jurisdictional and procedural prerequisites of justiciability were present. In addition, the court must have concluded that its judgment will "terminate the uncertainty or controversy giving rise to the proceeding" and that it will serve a useful purpose in stabilizing legal relations. The wide discretion of the court in moulding the declaration to the needs of the occasion ... enables it to respond effectively to those practical requirements.

Edwin Borchard, *Declaratory Judgments* 296 (2d ed. 1941) (emphasis added). *Brillhart* was decided after Borchard made this statement and the Court did not refute this

point. Thus, the majority's decision in this case, requiring that the district court explain why it assumed jurisdiction in the absence of any obvious alternative remedy, finds support nowhere.

Professor Wright has summarized the key reasons why a court may decline to entertain an action for declaratory judgment. A court "may refuse to give such relief where the judgment sought would not settle the controversy between the parties, or would cause inconvenience to some of them, or where the Declaratory Judgment Act is being used for 'procedural fencing.'" Wright, *supra*, at 715 (footnotes omitted). None of those circumstances is present here. In this case, all of these factors militate in favor of the exercise of jurisdiction. Here, the underlying state court action had been settled and was therefore no longer "pending" in any real sense; the declaratory judgment action was intended to end the controversy; no one has suggested that dismissal would have been more convenient to the parties; and these parties were not actively involved in any other litigation, so no one could have been engaged in "procedural fencing." The district court considered this case to be a good candidate for the exercise of jurisdiction and nothing in the record suggests that by doing this it abused its discretion.

Our road to today's decision, vacating the district court judgment rather than reviewing it, appears to have begun with *Continental Cas. Co. v. Robsac Indus.*, 947 F.2d 1367 (9th Cir.1991). In *Robsac*, the insured had already sued its insurer in state court, so that the parties to the proceeding were engaged in state litigation to determine the very issues that the insurer sought to litigate in the federal declaratory judgment action. The district court had summarily denied the insured's motion to stay the federal proceedings and decided the merits. On appeal, rather than simply remanding for the district court to explain why the exercise of federal jurisdiction was appropriate, as *Brillhart* and later *Wilton* would seem to dictate, we held as a matter of law that declaratory judgment jurisdiction was not appropriate.

We went further in *American National Fire Insurance Co. v. Hungerford*, 53 F.3d 1012 (9th Cir.1995), where the district court had entered a declaratory judgment in a case in which there was no pending state action between the insured and the insurer. In *Hungerford*, it was the underlying tort litigation between the injured party and the insured that was pending in state court. Because the question of insurance coverage to be litigated in the declaratory judgment proceeding involved policy exclusions that related to the conduct of the insured, we held that the district court should not have entertained the action, but should have told the insurer to proceed in state litigation. *See also Allstate Insurance Co. v. Mercier*, 913 F.2d 273 (6th Cir.1990).

Finally, in *Employers Reinsurance Corp. v. Karussos*, 65 F.3d 796 (9th Cir.1995), although acknowledging that after *Wilton* we could not review the district court de novo, we drew upon *Robsac* to create a presumption that all insurance coverage cases belong in state rather than federal court. In *Karussos*, we said that the proper inquiry on appeal is whether the district court abused its discretion in determining that circumstances warranted an exception to the "general rule that the action belongs in state rather than federal court." *Karussos*, 65 F.3d at 799. In *Karussos*, we did not even consider whether the insurance coverage issue could have been decided in the state court proceeding, a question which, in *Brillhart*, was critical.

Now, in this case, for the first time, we hold that the district court erred in proceeding with dispatch to decide the merits of a declaratory judgment action, even though (a) it was clear that the issues could not be decided in a related state court litigation because the state litigation had already been settled, and that (b) both parties were willing to have the district court decide the case.

This holding is a mistake. It is an abandonment of our duty to follow congressional policies enacted within constitutional constraints that were long ago determined to permit declaratory judgments in appropriate cases such as this one. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). Our circuit law, that district courts should abstain in the absence of

exceptional circumstances warranting the exercise of jurisdiction, is hard to square with the statute, the Rule, 60 years of history, or Supreme Court case law.

For these reasons I cannot join the majority opinion of my colleagues.