133 F.3d 1220
 98 Cal. Daily Op. Serv. 291, 98 Daily Journal
D.A.R. 398
GOVERNMENT EMPLOYEES INSURANCE COMPANY, Plaintiff-Appellee,
v.
Alexander DIZOL, Special Administrator of the Estate of
Kevin Tate Dizol, Deceased, Defendant-Appellant.
 No. 95-17393.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 24, 1997.
Decided Jan. 13, 1998.
 
 James Ireijo, Hilo, Hawaii, for defendant-appellant.
 Carleton B. Reid, Reid, Richards & Miyagi, Honolulu, Hawaii, for plaintiff-appellee.
 Before: HUG, Chief Judge, FLETCHER, ALARCON, REINHARDT, BRUNETTI, KOZINSKI, FERNANDEZ, T.G. NELSON, KLEINFELD, TASHIMA, and THOMAS, Circuit Judges.
 Opinion by Judge THOMAS; Dissent by Judge ALARCON.
 THOMAS, Circuit Judge:
 
 
 1
 In this appeal, we consider the circumstances under which federal courts must make findings concerning the exercise of jurisdiction pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. § 2201 (1994). We conclude that once subject matter jurisdiction exists, the district court may proceed with a declaratory relief action without sua sponte raising the issue of whether it should be entertained. If, however, the court does raise the issue sua sponte, or is asked to decline to entertain the action by a party, then it must explain the basis for its decision on the record.I
 
 
 2
 The automobile accident which draws our attention to this issue occurred on Mamalahoa Highway on the island of Hawaii, near Pu'uanahulu and Waikola.[1] Both the intoxicated driver Vernell Adams and passenger Kevin Dizol were killed in the one-vehicle collision. Dizol's estate settled its tort claims against Adams' estate for $35,000, the limit of Adams' applicable insurance policy. The estate also settled its tort claims against the Highlands Bar and Grill, where Adams had been drinking prior to the accident, for $255,000, an amount less than the bodily injury liability insurance coverage available to Highlands. Dizol's estate also received $15,000 in no fault and $35,000 in underinsurance motorist benefits from USAA Insurance Company.
 
 
 3
 The instant controversy arises out of the estate's claim for underinsured motorist benefits under a Government Employees Insurance Company ("GEICO") insurance policy issued to Harvey Dizol, the decedent's brother, which covers relatives of the policyholder. Unable to resolve the dispute, GEICO filed a complaint in federal court pursuant to the Declaratory Judgment Act, seeking a declaration that Dizol's estate was not entitled to any recovery under Harvey Dizol's policy. Dizol's estate did not move for abstention and neither party objected to federal court jurisdiction.
 
 
 4
 GEICO moved for summary judgment arguing, inter alia, that the claims were barred by the applicable statute of limitations and that the estate had violated the policy's prohibition against unauthorized settlements. The district court rejected GEICO's statute of limitations defense, but granted summary judgment because the estate had failed to obtain GEICO's written consent for the Adams and Highlands Bar settlements. At the time of the judgment, there was no lawsuit pending in the state courts of Hawaii.
 
 
 5
 On appeal, a three judge panel of this court entered an opinion sua sponte remanding the case to the district court for the entry of findings to demonstrate the fitness of the action for resolution under the Declaratory Judgment Act. Dizol, 108 F.3d at 1012. Upon a majority vote of the nonrecused active members of the court, we ordered rehearing en banc.
 
 II
 
 6
 In 1934, Congress authorized federal declaratory relief in the passage of the Declaratory Judgment Act. Subject to certain exceptions inapplicable here, the present form of the statute provides that:
 
 
 7
 In a case of actual controversy within its jurisdiction, [exceptions omitted] ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.
 
 
 8
 28 U.S.C. § 2201(a).
 
 
 9
 The Declaratory Judgment Act embraces both constitutional and prudential concerns. A lawsuit seeking federal declaratory relief must first present an actual case or controversy within the meaning of Article III, section 2 of the United States Constitution. Aetna Life Ins. Co. of Hartford v. Haworth, 300 U.S. 227, 239-40, 57 S.Ct. 461, 463-64, 81 L.Ed. 617 (1937).[2] It must also fulfill statutory jurisdictional prerequisites. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 672, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950). If the suit passes constitutional and statutory muster, the district court must also be satisfied that entertaining the action is appropriate. This determination is discretionary, for the Declaratory Judgment Act is "deliberately cast in terms of permissive, rather than mandatory, authority." Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 250, 73 S.Ct. 236, 243-44, 97 L.Ed. 291 (1952) (J. Reed, concurring). The Act "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." Public Affairs Associates v. Rickover, 369 U.S. 111, 112, 82 S.Ct. 580, 581-82, 7 L.Ed.2d 604 (1962).
 
 
 10
 Of course, this discretion is not unfettered. "[A] District Court cannot decline to entertain such an action as a matter of whim or personal disinclination." Id. Prudential guidance for retention of the district court's authority is found in Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), and its progeny.
 
 
 11
 That this discretion is vested in the district courts, rather than with appellate judges, was resolved in Wilton v. Seven Falls Co., 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). As Justice O'Connor noted in her opinion for the Court:
 
 
 12
 We believe it more consistent with the statute to vest district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp.
 
 
 13
 Id. at 289, 115 S.Ct. at 2143-44.
 
 
 14
 Wilton rejected de novo appellate review, citing the institutional advantage of trial courts in exercising discretion. Id. Thus, our review of a district court's decision to entertain an action under the Declaratory Judgment Act is deferential, under the abuse of discretion standard. Id. at 289-290, 115 S.Ct. at 2143-44.
 
 
 15
 When litigants have properly raised an objection to the district court's decision and the court has issued a written analysis detailing its reasoning, our appellate task is unstrained. However, the question posed by this appeal is how we should review the district court's exercise of its discretionary authority in the antipodal circumstance: when no party has objected and the court has not independently recorded a rationale. Does the district court commit reversible error if it does not provide a written explanation? Do we have a sua sponte obligation to examine the district court's exercise of its jurisdiction?
 
 
 16
 To date, we have answered these questions in the affirmative. Beginning with Continental Cas. Co. v. Robsac Indus., 947 F.2d 1367 (9th Cir.1991), and continuing with American Nat'l. Fire Ins. Co. v. Hungerford, 53 F.3d 1012 (9th Cir.1995), and Employers Reinsurance Corp. v. Karussos, 65 F.3d 796 (9th Cir.1995), we have assumed a sua sponte obligation to review and decide whether the district court has properly exercised its discretion even when no party has raised the issue. As a panel recently explained in Budget Rent-A-Car v. Crawford, 108 F.3d 1075, 1078 (9th Cir.1997):
 
 
 17
 Our initial duty, in reviewing an order granting declaratory relief in a diversity action involving questions of state law, is to determine whether the district court abused its discretion in determining that the relevant factors justified the exercise of its jurisdiction.
 
 
 18
 This jurisprudential approach has evolved through Golden Eagle Ins. Co. v. Travelers Companies, 103 F.3d 750 (9th Cir.1996), Polido v. State Farm Mut. Auto. Ins. Co., 110 F.3d 1418 (9th Cir.1997), and the panel decision in this case, into a requirement that the district court make written findings justifying its exercise of its discretionary jurisdiction or suffer reversal. As we recently summarized in St. Paul Fire & Marine Ins. Co. v. F.H., 117 F.3d 435, 437 (9th Cir.1997):
 
 
 19
 Under our recent precedent, the district court was required to consider the discretionary nature of its jurisdiction at the outset of the case. See Budget Rent-A-Car v. Crawford, 108 F.3d 1075, 1078 (9th Cir.1997). We have held that the district court has a duty, even though there is no state action pending at the time and the parties do not raise the issue, to determine on the record whether it should have exercised its discretionary jurisdiction.
 
 
 20
 This doctrine has not been without its practical, as well as philosophical, limitations. With increasing frequency, opportunists have seized on this rule for tactical maneuvering. Some litigants have initiated a federal declaratory action, then claimed error in the trial court's exercise of jurisdiction upon receiving an adverse decision by the trial court or on appeal. See, e.g., St. Paul Fire & Marine Ins. Co., 117 F.3d at 437. More often, lawsuits have been remanded sua sponte to state courts after years of federal litigation, defying the very principles of judicial economy and cooperative federalism the statute was designed to enhance. As we have observed, we "do the state no favor if, invoking the principle of comity, we reversed the district court and remanded this case simply to have it prosecuted again in state court on the same facts and the same law." Golden Eagle Ins. Co., 103 F.3d at 756. In those circumstances, we do no favor to the litigants, or our district judges, either. Thus, reexamination of our procedure is apropos.
 
 
 21
 How do we best balance these concerns against the undeniable value in reviewing a written explanation of a district court's decision to entertain the declaratory action? Fortunately, we have recent counsel from Acri v. Varian Associates, 114 F.3d 999 (9th Cir.1997) (en banc), in which we considered a similar problem in the exercise of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.[3] Acri considered "the extent to which a federal court is obliged to make a § 1367(c) analysis when no one has asked it to do so." Id. at 1000. Although the theories underlying the exercise of supplemental jurisdiction and the election to hear a suit for declaratory relief differ, there are significant commonalities. Both involve a decision of a district court possessing competent jurisdiction to either entertain or decline a lawsuit. Both circumstances often involve parties who, for whatever reason, do not object to federal discretionary jurisdiction.
 
 
 22
 Acri held that when a district court has power to hear a case under § 1367(a), the district court may exercise supplemental jurisdiction without sua sponte addressing whether jurisdiction should be declined. Id. As to appellate review, Acri similarly held that appellate courts are not required, sua sponte, to decide whether the district court abused its discretion. Id. For that reason, Acri held that in the absence of a preserved objection, appellate courts do not sua sponte decide whether the district court abused its discretion by retaining supplemental claims. Id.
 
 
 23
 In accordance with Acri 's philosophy, we hold that when a district court has constitutional and statutory jurisdiction to hear a case brought pursuant to the Declaratory Judgment Act, the district court may entertain the action without sua sponte addressing whether jurisdiction should be declined. We also hold that we are not required, sua sponte, to decide whether a district court abused its discretion in proceeding with the action when neither party raised an objection in the district court.[4]
 
 
 24
 With this holding, we return to our normal rules of appellate procedure. Non-jurisdictional matters not properly presented and considered by the district court may not be raised for the first time on appeal. Palmer v. Internal Revenue Service, 116 F.3d 1309, 1313 (9th Cir.1997). Similarly, non-jurisdictional issues not properly raised in appellate briefing will not be considered. S.E.C. v. American Capital Investments, 98 F.3d 1133, 1141 n. 9 (9th Cir.1996), cert. denied sub nom., Shelton v. Barnes, --- U.S. ----, 117 S.Ct. 1468, 137 L.Ed.2d 681 (1997). Parties may no longer crouch in the underbrush, poised for the opportunity to interpose a discretionary jurisdictional objection at the first hint of adversity. In accordance with normal appellate review, this holding further frees appellate panels from a sua sponte obligation to forfend the exercise of its discretionary jurisdiction by district courts when no one has raised the issue.
 
 
 25
 But what, one may inquire, is the district court's duty if a party timely objects to the exercise of discretionary jurisdiction under the Declaratory Judgment Act? For us to "provide appropriate guidance to the district courts," Wilton, 515 U.S. at 289, 115 S.Ct. at 2143-44, an adequate record is required. Thus, if a party properly raises the issue in the district court, the district court must make a sufficient record of its reasoning to enable appropriate appellate review. If on appeal the record is devoid of reasoning after an appropriate objection is registered, the case must be remanded to the district court to record its reasoning in a manner sufficient to permit the "proper application of the abuse of discretion standard on appellate review" dictated by Wilton. Id. This generally follows supplemental jurisdiction procedure. See Executive Software N. Am., Inc. v. United States Dist. Court, 24 F.3d 1545, 1558 (9th Cir.1994) (district court must provide written reasoning for its decision to decline jurisdiction).
 
 
 26
 The Brillhart factors remain the philosophic touchstone for the district court. The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation.[5] Robsac, 947 F.2d at 1371-73. If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court. Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1366-67 (9th Cir.1991). The pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief. Id. at 1367. Nonetheless, federal courts should generally decline to entertain reactive declaratory actions.
 
 
 27
 However, there is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically. "We know of no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage." Aetna Cas. & Sur. Co. v. Merritt, 974 F.2d 1196, 1199 (9th Cir.1992). Indeed, when other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief.[6] Chamberlain, 931 F.2d at 1367. If a federal court is required to determine major issues of state law because of the existence of non-discretionary claims, the declaratory action should be retained to avoid piecemeal litigation. Id. at 1367-68.
 
 
 28
 But these are considerations for the district court, which is in the best position to assess how judicial economy, comity and federalism are affected in a given case. Our review, if actuated by proper appeal of the district court decision, is bounded by the same principles.
 
 III
 
 29
 The panel and the dissent suggest that Brillhart and Wilton compel an entirely different result; that the Supreme Court has commanded the district courts to make written findings before retaining discretionary jurisdiction under the Declaratory Judgment Act. We must respectfully disagree with this interpretation. There is, in fact, nothing in Brillhart or Wilton which embraces such a requirement. Although Brillhart speaks to a "determination, certainly in the first instance, by the District Court," this assignment of responsibility simply recognizes the discretion reposed in the district courts. It does not require us to adopt a rule requiring automatic reversal if a district court does not sua sponte consider in written form whether the action should be entertained. No other circuit has construed Brillhart or Wilton to convey such a command and no other circuit has imposed on itself an obligatory sua sponte enforcement duty.
 
 
 30
 Indeed, the automatic reversal rule adopted by the panel runs counter to Wilton 's philosophy of allocating to the district court, rather than the court of appeals, the discretion to accept or deny jurisdiction under the Declaratory Judgment Act. In resolving this question, Wilton found it "more consistent with the statute to vest the district courts with discretion in the first instance." 515 U.S. at 289, 115 S.Ct. at 2143-44. This determination was founded upon the notion that "as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question." Id. (quoting Miller v. Fenton, 474 U.S. 104, 114, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985)). The dissent's theory would intrude on this idea, reimposing close appellate scrutiny where none is required, or desired.[7]
 
 
 31
 In fact, our decisions in Robsac, Hungerford, Karussos, and Golden Eagle imply that if the district court does not provide a written explanation for retaining jurisdiction, we may make our own de novo determination based on the district court record. This theory cannot be reconciled with Wilton, which vests this discretion in the district court and interdicts de novo appellate review. Thus, neither Brillhart nor Wilton undercuts our holding; on the contrary, both buttress it.
 
 IV
 
 32
 Of course, the preferable practice is for the district court expressly to consider whether a properly filed declaratory judgment action should be entertained and to record its reasons for doing so. As we noted in considering a similar issue in Acri, actually deciding whether to retain jurisdiction is a "responsibility that district courts are duty-bound to take seriously." 114 F.3d at 1001. Our holding does not detract from the important issues of comity, judicial economy and federalism discussed in Brillhart. As Judge Rymer aptly observed for the court in Acri, "[g]iven the importance of these values in our federal system, the proper administration of justice is far better served by deliberative action than by default." Id. However, as in Acri, "no matter how much we might have preferred a reasoned consideration, the district court here was not without jurisdiction over the state law claims." Id.
 
 V
 
 33
 In summary, we hold that when constitutional and statutory jurisdictional prerequisites to hear a case brought pursuant to the Declaratory Judgment Act have been satisfied, the district court may proceed with consideration of the action without sua sponte addressing whether jurisdiction should be declined. We are not obligated, sua sponte, to decide whether a district court abused its discretion in exercising discretionary jurisdiction when neither party has raised the issue. If a party has properly raised the issue before the district court, the court must record its reasoning for exercising jurisdiction in accordance with Brillhart and the general considerations we have described herein. We overrule suggestions to the contrary in Continental Cas. Co. v. Robsac Indus., American Nat'l Fire Ins. Co. v. Hungerford, Employers Reinsurance Corp. v. Karussos, Budget Rent-A-Car v. Crawford, Golden Eagle Ins. Co. v. Travelers Cos., Polido v. State Farm Mut. Auto. Ins. Co., St. Paul Fire & Marine Ins. Co. v. F.H., and Budget Rent-A-Car v. DeCoite, 113 F.3d 1132 (9th Cir.1997).
 
 
 34
 We vacate the panel decision and return control of the case to the panel for resolution of the appeal on its merits.
 
 
 35
 ALARCON, Circuit Judge, dissenting, with whom Judges FLETCHER, REINHARDT, and BRUNETTI join.
 
 
 36
 I respectfully dissent.
 
 
 37
 In Brillhart v. Excess Insurance Co. of America, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), the Supreme Court instructed that in an action filed pursuant to the Declaratory Judgment Act, a district court has the duty to determine whether the presentation of the plaintiff's claim in state court has been foreclosed under applicable law or whether it can be tested in a pending state court proceeding. Id. at 495-96, 62 S.Ct. at 1175-76.
 
 
 38
 In Wilton v. Seven Falls Co., 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995), the Supreme Court held that a district court has the duty to determine "in the first instance" whether it should exercise its discretionary jurisdiction under the Declaratory Judgment Act. Id. at 289, 115 S.Ct. at 2143-44. Notwithstanding the clear command of the Supreme Court's words in Wilton, the majority today holds that a district court may consider the merits of an action brought pursuant to the Declaratory Judgment Act "without sua sponte addressing whether jurisdiction should be declined."
 
 
 39
 The majority also holds that a panel of this court is "not obligated, sua sponte, to decide whether a district court abused its discretion in exercising discretionary jurisdiction when neither party has raised the issue." The majority gives no clue as to the import of its enigmatic use of the words "not obligated." If these words are used in their ordinary meaning, then it would appear that a panel of this court may sua sponte "decide whether a district court abused its discretion in exercising discretionary jurisdiction when neither party has raised the issue." I believe the majority's new rules are directly contrary to the Supreme Court's decisions in Brillhart and Wilton and will result in an unequal application of appellate review. Some panels will ignore the issue if it was not raised by a party before the district court, others will be free to reach the question on a comparable record although they are not obligated to do so. I cannot assent to a chaotic rule that will make the outcome of the case depend on a particular panel's unreviewable exercise of its discretion to decide whether the district court abused its discretion based on the facts and circumstances in the record.
 
 
 40
 Instead of fostering a capricious approach to appellate review and countenancing the failure of a district court to fulfill its serious responsibility to determine whether it should exercise its discretionary jurisdiction, I would hold that a district court must make findings supporting its conclusion that it should or should not reach the merits of a declaratory action or face a summary remand with directions to do so in order that a reviewing court may determine whether the district court abused its discretion. I will next set forth the analytical basis for my conclusion that I cannot join in the majority's number.
 
 
 41
 * SUBJECT MATTER JURISDICTION
 
 
 42
 This case presents a serious question concerning whether the district court had subject matter jurisdiction over this action for declaratory relief. It, too, was not considered or resolved by the district court or the majority.
 
 
 43
 The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The question whether GEICO lacks standing to obtain declaratory relief was not raised by the Dizol Estate. Nevertheless, we have the duty to raise this question sua sponte because standing is a jurisdictional requirement. United States v. Viltrakis, 108 F.3d 1159, 1160 (9th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 126, 139 L.Ed.2d 76 (1997). The "constitutional minimum of standing" is comprised of three elements:
 
 
 44
 First, the plaintiff must have suffered an "injury in fact"--an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical.' " Second, there must be a causal connection between the injury and the conduct complained of--the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."
 
 
 45
 Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (alterations in original) (citations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." Id. at 561, 112 S.Ct. at 2136.
 
 
 46
 In its claim for declaratory relief, GEICO asked the district court to declare that it is not liable to the Dizol Estate under its underinsurance benefits policy because the statute of limitations would bar any claim that the Dizol Estate might file, and the Dizol Estate's unauthorized settlement with Vernell Adams and the Highlands Bar violated policy restrictions. The underinsurance policy at issue in this matter covered bodily injury caused by an accident with an underinsured motor vehicle.[1] The record shows that the economic loss to the Dizol Estate resulting from the death of Kevin Dizol was $357,177. Adams was insured by a liability policy with bodily injury limits of $35,000. The Highlands Bar's insurance policy limits are not a part of the record. GEICO has failed to present evidence showing that the economic loss suffered by the Dizol Estate is greater than the sum of Adams's policy limits and the Highlands Bar's policy limits; therefore, GEICO has failed to carry its burden of demonstrating that it was threatened with injury because Adams was underinsured. To the contrary, in the following passage from its responsive brief, GEICO asserts that under Hawaii law its underinsurance policy does not apply under these circumstances.
 
 
 47
 Under the provisions of Chapter 663, Hawaii Revised Statutes, Highlands, as a joint tortfeasor along with Adams, would be subject to any judgment against Adams so long as Highlands was at least partially responsible for DIZOL's injuries. It is GEICO's position that based thereon, Adams was not "underinsured" for purposes of GEICO's policy.
 
 
 48
 In this matter, Adams was driving under the influence of alcohol when the accident occurred. Accordingly, Adams's estate was liable for the loss suffered by the Dizol Estate. The Highlands Bar was jointly liable for the injuries to Dizol because it served alcohol to Adams in violation of Hawaii's dram shop law. Hawaii's courts have not addressed the question whether an insurance company has any liability under an underinsured motorist's policy where a joint tortfeasor's separate insurance policy provides sufficient coverage to pay for the entire loss suffered by the injured party.
 
 
 49
 This issue has been addressed by state courts in Connecticut and New Jersey. In Bauter v. Hanover Insurance Co., 247 N.J.Super. 94, 588 A.2d 870 (1991), the court held that both the tortfeasor's automobile policy and the dram shop's liability insurance must be considered in determining whether an insurance company is liable under an underinsured motorist policy. Id. at 873. Conversely, in American Universal Insurance Co. v. DelGreco, 205 Conn. 178, 530 A.2d 171 (1987), the Supreme Court of Connecticut held that underinsured motorist coverage was activated without regard to a dram shop's liability because the bodily injury insurance coverage referred to in the statute was limited to automobile policies. Id. at 182. Each court's decision was based upon a comprehensive review of applicable statutory language and relevant legislative history.
 
 
 50
 To exercise our subject matter jurisdiction in this matter, we must assume either that the Highlands Bar's dram shop insurance policy is not sufficient to pay the Dizol Estate for all of its losses, or even if it is sufficient, a Hawaii court would nevertheless hold GEICO liable under its underinsurance policy. We lack the authority to assume we have subject matter jurisdiction in order to decide a novel question presented in an action for a declaratory judgment.
 
 
 51
 Since GEICO has failed to present any evidence regarding the amount of coverage available under the Highlands Bar's policy, GEICO seeks a multiple choice advisory opinion. See In re MacNeil, 907 F.2d 903, 904 (9th Cir.1990) (concluding that the absence of a factual determination that may have resolved the legal issues before the court rendered any expression by the court on that legal issue advisory). I seriously question whether this court has any jurisdiction over this appeal because GEICO has failed to carry its burden of demonstrating that it has standing. Because of the complexity of this novel issue of Hawaii insurance law and policy, I have no doubt that the district court had a duty to consider GEICO's standing sua sponte before exercising its discretionary jurisdiction under the Declaratory Judgment Act.
 
 II
 
 52
 DISCRETIONARY JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT
 
 
 53
 The majority has concluded that this court's decision in Acri v. Varian Associates, Inc., 114 F.3d 999 (9th Cir.1997) (en banc), must be applied to the question whether a district court has the responsibility to determine whether an action filed under the Declaratory Judgment Act is an appropriate case for the exercise of its discretionary jurisdiction if none of the parties request that it do so. In Acri, we held that "the district court may exercise supplemental jurisdiction over state law claims without sua sponte addressing whether it should be declined under § 1367(c)." Id. at 1000 (emphasis added). We also concluded in Acri that an appellate court is "not required, sua sponte, to decide whether the district court abused its discretion under § 1367(c) when neither party has raised the issue." Id. (emphasis added).
 
 
 54
 It should be noted at the outset that the Supreme Court has not yet considered the question whether a district court may exercise supplemental jurisdiction over non-diverse state law claims, without first considering the factors set forth in § 1367(c), unless asked to do so by a party. In Acri we relied instead on the Seventh Circuit's opinion in Myers v. County of Lake, 30 F.3d 847 (7th Cir.1994), and the decision of the District of Columbia Circuit in Doe ex rel. Fein v. District of Columbia, 93 F.3d 861, 871 (D.C.Cir.1996) (per curiam). These opinions do not discuss the duties of a district court or an appellate court under the Declaratory Judgment Act.
 
 
 55
 While recognizing that "the theories underlying the exercise of supplemental jurisdiction and the election to hear a suit for declaratory relief differ," the majority failed to analyze the distinctions and discrete policies that led to the enactment of these dissimilar statutes. Because I believe that an understanding of the differing policies that motivated the adoption of the Declaratory Judgment Act and the Supplemental Jurisdiction Act is essential to a resolution of the questions presented in this appeal, I will provide that historical background.
 
 
 56
 Legislation permitting federal courts to issue declaratory judgments was first introduced in 1919. At that time, no state provided the remedy of a declaratory judgment. Donald L. Doernberg & Michael B. Mushlin, The Trojan Horse: How the Declaratory Judgment Act Created a Cause of Action and Expanded Federal Court Jurisdiction While the Supreme Court Wasn't Looking, 36 UCLA L.Rev. 529, 550 n. 91 (1989). The bill was introduced at every session of Congress from 1919 until 1932. Id. at 561. Discouraged by Congress's failure to enact a declaratory judgment remedy, the Commissioners on Uniform State Laws proposed a uniform act for adoption by the states in 1922. Id. at 561 n. 148. When Congress finally enacted the Declaratory Judgment Act in 1934, a majority of the states had enacted legislation authorizing declaratory relief. Id.
 
 
 57
 Prior to the enactment of the Declaratory Judgment Act, an insurance company involved in a dispute with its insured over coverage could not invoke the jurisdiction of a federal district court to seek a declaration concerning its liability under the policy. If the insured lived in a state that had enacted a statute providing for declaratory relief, the insurance company could file a state court action for a declaration. Otherwise, the insurance company had no remedy. Instead, it was required to wait until its insured filed a state court action for breach of the insurance contract. If the insured filed in state court, the insurance company could remove the action to the federal district court if the parties were diverse and the amount in controversy exceeded the jurisdictional amount. If, however, the insured, while demanding that the insurance company provide coverage pursuant to the terms of the insurance policy, delayed filing an action in state or federal court for specific performance, the insurance company risked losing "the benefit of evidence through disappearance, illness or death of witnesses." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937). In addition, an insurance company was compelled to maintain reserves indefinitely to cover its potential liability until its insured filed an action in state court and its liability was finally determined. Id. The enactment of the Declaratory Judgment Act was "intended to minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until his adversary should see fit to begin an action after the damage has accrued." 10A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 2751, at 569 (2d ed. 1983).
 
 
 58
 On January 5, 1935, Aetna Life Insurance Company filed an action for a declaration under the newly enacted Declaratory Judgment Act. The state of Missouri did not enact a declaratory judgment statute until June 22, 1935, approximately five months later. The district court denied relief because it erroneously concluded that it lacked subject matter jurisdiction. Haworth, 300 U.S. at 236, 57 S.Ct. at 462. The Supreme Court reversed, holding that there was a definite and concrete "dispute relat[ing] to the legal rights and obligations arising from the contracts of insurance." Id. at 242, 57 S.Ct. at 464.
 
 
 59
 The Court held that the term "actual controversy" in the Declaratory Judgment Act does not require that the insured have previously filed an action for contract damages or equitable relief. Id. at 240, 57 S.Ct. at 463. The Court further held that a district court may grant relief in an action filed under the Declaratory Judgment Act if there is "a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Id. at 241, 57 S.Ct. at 464. (emphasis added).
 
 
 60
 In 1942, the Supreme Court held in Brillhart v. Excess Insurance Co. of America, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942) that the district court erred in dismissing an action for a declaration under the Declaratory Judgment Act because related proceedings were pending in state court. Id. at 49596, 62 S.Ct. at 1175-76. The district court did not make any findings regarding whether the issue presented in the insurance company's declaratory relief action could have been raised in the state court proceeding. The Court stated that it would not have disturbed a finding by the district court that the insurance company's claims could not be resolved in a proceeding pending in state court. Id. at 496-97, 62 S.Ct. at 1176-77. It then noted, "[b]ut no such finding can be extracted from this record." Id. at 497, 62 S.Ct. at 1176. The Court declined to make an independent determination of this question on the ground that making factual findings is not an appropriate appellate function. Id.
 
 
 61
 The Court spelled out the district court's duty in determining whether it should exercise its discretion under the Declaratory Judgment Act as follows:
 
 
 62
 Where a District Court is presented with a claim such as was made here, it should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can be better settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to proceed in that proceeding, etc.
 
 
 63
 Id. at 495, 62 S.Ct. at 1175-76.
 
 
 64
 In Brillhart, the Tenth Circuit had reversed the district court's dismissal of the action. Id. at 494, 62 S.Ct. at 1175. It had ordered the district court to proceed to consider the merits of the claim for declaratory relief. Id. The Supreme Court reversed the judgment of the Tenth Circuit and directed it to remand the matter to the district court with directions that the district court determine "whether, under applicable local law, the claims sought to be adjudicated by the respondent in this suit for a declaratory judgment had either been foreclosed by Missouri law or could adequately be tested in the garnishment proceeding pending in the Missouri state court." Id. at 495-96, 62 S.Ct. at 1176.
 
 
 65
 The Court set forth the rationale for its conclusion that a district court must make findings regarding the fitness of a claim for declaratory relief in a diversity action governed by state law in the following words:
 
 
 66
 Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.
 
 
 67
 Id. at 495, 62 S.Ct. at 1175-76.
 
 
 68
 Thus, in Brillhart, the Court instructed that a district court must consider whether it should abstain from issuing a declaration in a diversity action where an action is pending in a state court between the same parties presenting the same issues to avoid vexatious interference with state court's jurisdiction. Id.
 
 
 69
 In Wilton v. Seven Falls Co., 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) the Court resolved two questions concerning the application of the Brillhart doctrine. First, the Court held that the rule announced in Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), that, absent proof of exceptional circumstances, a district court must exercise its jurisdiction notwithstanding the fact that a parallel action has been filed in state court, has no application in an action filed under the Declaratory Judgment Act. Wilton, 515 U.S. at 286, 115 S.Ct. at 2142.
 
 
 70
 The Court held that the "[d]istinct features of the Declaratory Judgment Act ... justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of Colorado River and Moses H. Cone." Id. In support of this proposition, the Court commented as follows: "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Id.
 
 
 71
 The Court concluded its discussion of the district court's discretionary authority with these words:
 
 
 72
 Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.
 
 
 73
 Id. at 288, 115 S.Ct. at 2143.
 
 
 74
 The second issue presented to the Court in Wilton was whether an appellate court may determine de novo if the district court properly exercised its discretion to grant or deny a claim filed under the Declaratory Judgment Act. The Court held that a district court's decision to grant or to refrain from granting declaratory relief must be reviewed for abuse of discretion. Id. at 289, 115 S.Ct. at 2143-44. The Court rejected the "invitation" to adopt a de novo standard of review. Id. The Court stated: "We believe it is more consistent with the statute to vest district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and fitness of the case for resolution, are peculiarly within their grasp." Id. (emphasis added).
 
 
 75
 The Court in Wilton clarified the duty of the district courts and the courts of appeals in complying with the power granted to them by Congress under the Declaratory Judgment Act. To satisfy federalism concerns, a district court has the duty to consider whether it should abstain from exercising its discretionary jurisdiction to avoid needlessly deciding state issues, prevent duplicitous litigation, and discourage forum shopping. Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1367 (9th Cir.1991). The concern for preserving federalism and respecting comity interests is particularly weighty where the state's interest in protecting "complex state administrative processes from undue federal interference" is at stake, as in the wholly state regulated insurance industry and where the federal interest is minimal because the plaintiff's claim raises only questions of state law. Continental Cas. Co. v. Robsac Indus., 947 F.2d 1367, 1371 (9th Cir.1991) (citation omitted). "States, as a matter of tradition and express federal consent, have an important interest in maintaining precise and detailed regulatory schemes for the insurance industry." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, ----, 116 S.Ct. 1712, 1729, 135 L.Ed.2d 1 (1996) (Kennedy, J., concurring) (citing the McCarran-Ferguson Act 59 Stat. 33, as amended, 15 U.S.C. §§ 1011, et seq.). The Sixth Circuit has expressed the importance of respecting a state's interest in questions involving the development of its insurance law as follows: "The states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." Allstate Ins. Co. v. Mercier, 913 F.2d 273, 279 (6th Cir.1990).
 
 
 76
 Pursuant to Wilton, an appellate court has the duty to determine whether the district court abused its discretion in exercising its discretionary jurisdiction under the Declaratory Judgment Act. Obviously, that duty cannot be performed if the district court has not fulfilled its responsibility to consider whether it should abstain from issuing a declaration because federalism concerns predominate. Contrary to the Court's clear direction, the majority has concluded that the district court is free to ignore its duty, and this court has no obligation to direct the district court to comply with Brillhart and Wilton. Our decision in Acri does not support the majority's determination that we need not obey the decision of this nation's highest court.
 
 
 77
 In Acri v. Varian Associates, Inc., 114 F.3d 999 (9th Cir.1997) (en banc), this court was confronted with a very narrow question. The plaintiff filed an action in state court in which he alleged claims arising under federal and state law. The parties were non-diverse. The defendant removed the action to federal court. Id. at 999. The district court granted summary judgment on the federal claim and on the supplemental state law claims. Id. Neither the plaintiff or the defendant objected to the district court's exercise of its jurisdiction to reach the merits of the state law claims pursuant to 28 U.S.C. § 1367(c). Id. The district court in Acri did not raise this issue sua sponte. Id.
 
 
 78
 Prior to oral argument, a three-judge panel of this court directed the parties "to be prepared to argue whether there is [subject matter] jurisdiction over supplemental claims in light of the dismissal of the [federal] claim." Following oral argument, the three-judge panel sua sponte called for a vote of the active judges to determine "whether a district court that grants summary judgment on federal claims has discretion then to decide pendent state law claims, or whether the district court, under these circumstances, must dismiss the pendent claims without prejudice for lack of [subject matter] jurisdiction."
 
 
 79
 A majority of the active judges of this circuit voted to consider en banc the jurisdictional question presented by the three-judge panel. The en banc court held that "we have no sua sponte obligation to insure that the discretionary retention of supplemental jurisdiction, to which no one has objected, was prudent." Id. at 1001. This court's decision in Acri can be summarized as follows: If the plaintiff files a federal claim and non-diverse state law claims, the district court has subject matter jurisdiction over the state law claims after dismissing the federal claim. This court also held that it need not consider the factors set forth in § 1367(c)(1) and (2), i.e. whether "the claim raises a novel or complex issue of state law" or whether "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction" unless a party requests it to do so. Id. at 1000.
 
 
 80
 The majority has failed to consider the clear distinction between an action filed pursuant to § 1367 and an action for declaratory relief. In an action filed pursuant to § 1367, the injured party has filed non-diverse state and federal claims in federal court so that one court will consider all related issues, rather than invoke the jurisdiction of separate court systems to resolve transactionally related claims.[2] Accordingly, disposition of the merits of the non-diverse claims after dismissal of any federal claims will enable the court to dispose of all the plaintiff's claims in one forum. On the other hand, an action for declaratory relief filed by an insurance company in federal court for a declaration that it is not liable under state law, while an action is pending in state court between the injured party and the tortfeasor, does not ensure that one court system will decide all the claims arising from the transaction that caused the injury to the insured. Abstention by a federal court in a case involving a request for a declaration involving a novel question of state law enables the state court to consider all the transactionally related issues in one forum.
 
 
 81
 Moreover, in Acri, we were not called upon to discuss our national policy that federal courts should consider comity and federalism where an issue is raised regarding an interpretation of state law. The out-of-circuit cases we relied upon in Acri did not involve requests for declaratory judgments or questions of comity and federalism. For example, in Myers v. County of Lake, 30 F.3d 847 (7th Cir.1994), the court held that "[b]ecause no one has contested the magistrate judge's decision to exercise supplemental jurisdiction, that is as far as we need to go." Id. at 850.
 
 
 82
 The majority has failed to consider the subsequent decision of the Seventh Circuit which held that "when matters of comity are involved, the doctrines of waiver give way...." Hoover v. Wagner, 47 F.3d 845, 852 (7th Cir.1995). The majority also failed to cite or consider the Seventh Circuit's decision in Waldron v. McAtee, 723 F.2d 1348 (7th Cir.1983), in which the same court held that "the court has the power and in an appropriate case the duty to order abstention, if necessary for the first time at the appellate level even though no party is asking for it." Id. at 1351 (emphasis added).
 
 
 83
 In Acri, this court also relied on the District of Columbia Circuit's decision in Doe ex rel. Fein v. District of Columbia, 93 F.3d 861 (D.C.Cir.1996) for the proposition that "review of the discretionary aspect to supplemental jurisdiction ... is waived unless raised in the district court." Acri, 114 F.3d at 1001. In Doe ex rel. Fein, the court stated: "The discretionary aspect to supplemental jurisdiction is waivable." 93 F.3d at 871. The D.C. Circuit did not have before it the question whether the waiver rule applied to an action for declaratory relief.
 
 
 84
 The majority's opinion creates an inter-circuit conflict with those circuits that have addressed the question whether Brillhart abstention can be raised sua sponte. In Nationwide Mutual Fire Insurance Co. v. Willenbrink, 924 F.2d 104 (6th Cir.1991), the Sixth Circuit remanded an action in which a declaration was issued on the merits with instructions that "[t]he district court on remand should specifically consider whether its exercise of discretion in granting a declaratory judgment is appropriate in this case." Id. at 104. The court noted that:
 
 
 85
 In this case, neither party brought to the attention of the District Court the above-discussed line of authority from this Court and the Supreme Court, nor is it apparent from the record that the District Court was informed that the state court had expressly reserved the coverage question to a later date. In light of these omissions and the duty of comity owed by federal courts to the state courts in our federalist system of independent courts of equal dignity, the District Court should specifically address the question of the exercise of its discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201.
 
 
 86
 Id. at 105.
 
 
 87
 In Jackson v. Culinary School of Washington, 59 F.3d 254 (D.C.Cir.1995), the district court granted declaratory relief on the plaintiff's state law claims. The D.C. Circuit concluded that:
 
 
 88
 As to the state law claims, we are unable to determine whether the district court's decision to grant declaratory relief on these claims was an abuse of discretion because the district court offered no explanation of its decision to proceed to the merits. Although the issue of the appropriateness of the declaratory judgment was not raised by the parties below, the considerations counseling against declaratory judgment in this case ... are sufficiently grave that we find it prudent to remand the case so that the district court has the opportunity to exercise its discretion in accordance with the factors made relevant in Wilton, thereby providing a basis for appellate review under the appropriate standard.
 
 
 89
 Id. at 255 (emphasis in the original).
 
 
 90
 In 1973, the Fourth Circuit wrote as follows:
 
 
 91
 Although the failure of the parties to raise the abstention issue either at trial or on appeal is entitled to some consideration, the public policy underlying the application of the abstention doctrine is so strong that we notice its application ex mero motu. That abstention is not urged by a party does not mean that the point lacks merit. It is true that abstention costs in terms of time and money. But in the relatively rare instances of application it is not too high a price to pay for federalism.
 
 
 92
 AFA Distrib. Co. v. Pearl Brewing Co., 470 F.2d 1210, 1213 (4th Cir.1973) (citations omitted).
 
 
 93
 The Sixth Circuit's decision in Willenbrink and the D.C. Circuit's opinion in Jackson demonstrate that the issues regarding supplemental jurisdiction in Acri have no application to the question whether comity and federalism concerns require federal courts to act sua sponte before exercising their discretionary jurisdiction under the Declaratory Judgment Act.
 
 
 94
 The majority contends that a requirement that a district court enter findings justifying its retention or suffer a remand for the entry of such findings is subject to abuse because "[w]ith increasing frequency, opportunists have seized on this rule for tactical maneuvering." The majority asserts further that "[s]ome litigants have initiated a federal declaratory action, then claimed error in the trial court's exercise of jurisdiction upon receiving an adverse decision by the trial court or on appeal." The majority's reliance on this example of alleged abuse to justify its holding is puzzling in view of the fact that, in this case, the issue was not raised by either party in the district court or in the briefs filed in this court. The three-judge panel in this matter noted this as follows:
 
 
 95
 Neither party made any reference before the district court to the fact that the court's jurisdiction under the Declaratory Judgment Act was discretionary, nor did they point to any special circumstances in this case that weighed in favor of reaching the merits of GEICO's contentions. Thus, the parties did not inform the district court that it had to decide whether it should exercise its discretion to grant a declaration in view of the fact that a related proceeding was pending in state court at the time this action was filed. The district court's written order makes no reference to the discretionary nature of its jurisdiction. This issue was not discussed by either party in the initial briefs filed before this court.
 
 
 96
 Government Employees Ins. Co. v. Dizol, 108 F.3d 999, 1002 (9th Cir.1997).
 
 
 97
 As noted above, in Acri the three-judge panel did not sua sponte determine whether the district court should have made findings before exercising its discretionary jurisdiction to consider the merits of the supplemental claims. Instead, it requested that an en banc court determine whether it had subject matter jurisdiction because the district court had dismissed the federal claim. The en banc court concluded that the district court's subject matter jurisdiction was not affected by the dismissal of the federal claim. The en banc court then exercised its discretion not to consider the question whether the district court abused its discretion in reaching the merits of the supplemental claims. The court stated: "We therefore decline to consider sua sponte whether the district court prudently exercised supplemental jurisdiction in this case, and return control to the panel." Acri, 114 F.3d at 1001.
 
 
 98
 The majority's mandate returning control of the case "for resolution of the appeal on its merits" is inconsistent with its determination that an appellate court is not required or obligated to consider this question sua sponte. Here, unlike the situation in Acri, the three-judge panel remanded this matter to the district court for determination "whether the circumstances of this case warrant the exercise of its jurisdiction to issue a decision on the merits in this matter." Dizol, 108 F.3d at 1012. In Acri, the three-judge panel requested guidance from an en banc court regarding whether it had subject matter jurisdiction over the supplemental claims.
 
 
 99
 The three-judge panel in this matter expressed no doubts concerning its jurisdiction over this appeal. It did not sua sponte review the exercise of the district court's discretion. Instead, it vacated the district court's decision on the merits "because it is not clear to us from the present record if it considered whether GEICO could have presented its claims in a Hawaii court at the time this action was filed." Id. The court remanded with directions that the district court determine "whether the circumstances of this case warrant the exercise of its jurisdiction to issue a decision on the merits in this matter." Id. The three-judge panel also instructed as follows: "If the district concludes that this is an appropriate case for the exercise of its discretionary jurisdiction in this matter, the district court may re-enter the judgment previously issued in this matter." Id. Thus, the three-judge panel did not sua sponte examine the abstention issues that may be implicated in this appeal. Instead, it exercised its discretion to remand the matter for findings to enable this court to review any comity or federalism issues in this case that may require abstention.
 
 
 100
 The majority, having concluded that an appellate court is not obligated to consider sua sponte whether the district court abused its discretion in exercising its discretionary jurisdiction under the Declaratory Judgment Act, should have directed the three-judge panel to determine if this is an appropriate case to exercise its discretionary power to consider sua sponte whether it should remand this matter to the district court for a determination in the first instance if comity and federalism concerns require that it abstain from exercising its discretionary jurisdiction. The failure to permit the three-judge panel to make this determination, although it is not required or obligated to do so, is contrary to the majority's holding in this very case.
 
 
 101
 The Supreme Court has not yet decided whether a federal court has the power sua sponte to consider whether a district court abused its discretion by ignoring its duty to weigh federalism and comity concerns in exercising its discretion to abstain from issuing a declaration, as required under Brillhart and Wilton. The Court has recognized, however, that an appellate court may do so in discussing a closely related issue. In Bellotti v. Baird, 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976), the Court stated as follows: "It is not entirely clear that appellants suggested the same interpretation in the District Court as they suggest here. Nevertheless, the fact that the full arguments in favor of abstention may not have been asserted in the District Court does not bar this Court's consideration of the issue." Id. at 143 n. 10, 96 S.Ct. at 2864 n. 10 (citation omitted). We have also recognized that "this court has the authority to apply the doctrine of abstention regardless of whether the issue was raised before the District Court or even before this Court." Hydrostorage, Inc. v. Northern Cal. Boilermakers Local Joint Apprenticeship Comm., 891 F.2d 719, 725 (9th Cir.1989) (internal quotation marks and citation omitted), cert. denied sub nom. California Div. of Apprenticeship Standards v. Hydrostorage, Inc., 498 U.S. 822, 111 S.Ct. 72, 112 L.Ed.2d 46 (1990).
 
 
 102
 My research has revealed that every court that has addressed the question whether an appellate court can raise abstention sua sponte where the case involves the doctrines of federalism and comity has answered in the affirmative. In Morrow v. Winslow, 94 F.3d 1386 (10th Cir.1996), the Tenth Circuit held that it had the power to raise an abstention issue although it was not raised in the district court. Id. at 1390. The court ordered the parties to file supplemental briefs addressing the applicability of the abstention doctrine. Id. That is precisely what the three-judge panel did in the matter sub judice.
 
 
 103
 In Robinson v. City of Omaha, 866 F.2d 1042 (8th Cir.1989), the Eighth Circuit set forth the relevant rule in these words: "The applicability of federal court abstention was raised neither below nor on appeal. Nevertheless, since '[t]he practice of abstention is equitable in nature,' this court may raise the issue of the appropriateness of abstention sua sponte." Id. at 1043 (citations omitted).
 
 
 104
 In Hughes v. Lipscher, 906 F.2d 961 (3d Cir.1990), the court followed the Supreme Court's instruction in Bellotti, 428 U.S. at 143 n. 10, 96 S.Ct. at 2864 n. 10, in concluding that "[a]lthough the defendants' failure to raise abstention could arguably amount to waiver of its application, we have authority to consider the matter sua sponte." Id. at 964.
 
 
 105
 In Waldron v. McAtee, 723 F.2d 1348 (7th Cir.1983), the Seventh Circuit held that "the court has the power and in an appropriate case the duty to order abstention, if necessary for the first time at the appellate level, even though no party is asking for it." Id. at 1351.
 
 
 106
 It is understandable that this court did not discuss these decisions in Acri. Acri did not involve the question whether a court should abstain to preserve "our federalism." It was solely concerned with the question whether a federal court is deprived of subject matter jurisdiction over non-diverse supplemental state law claims when it dismisses the federal claim which gave it independent subject matter jurisdiction. None of the cases relied upon in Acri raised questions of federalism or comity. Where federalism and comity concerns are present, the ordinary rule that an issue not raised below is waived simply does not apply. Accordingly, the majority's reliance on Acri is misplaced.
 
 
 107
 I agree with the majority that needless expense and a waste of judicial resources may result when we are compelled to remand because a district court has ignored the teachings of the Supreme Court's decisions in Brillhart and Wilton. The remedy is quite simple: the district court merely needs to fulfill its responsibility to make findings supporting its decision to exercise jurisdiction in a diversity action for declaratory relief. Sparing expense is never an appropriate justification for abrogating responsibility.
 
 
 108
 The unintended consequence of the majority's opinion is that those district judges who do not "expressly ... consider whether a properly filed declaratory judgment action should be entertained and ... record [their] reasons for doing so" will escape appellate review of their failure to comply with the Declaratory Judgment Act and the Supreme Court's decisions in Brillhart and Wilton. Only those judges who fulfill this responsibility will receive appellate scrutiny regarding the exercise of their discretion. I cannot agree that we should so reward those who ignore the Supreme Court's clear explanation in Brillhart and Wilton of a district court's responsibility in determining whether to exercise its jurisdiction under the Declaratory Judgment Act.
 
 
 
 [1]
 A more exhaustive description of the facts is contained in the panel decision in this case. Government Employees Insurance Co. v. Dizol, 108 F.3d 999 (9th Cir.1997)
 
 
 [2]
 The dissent argues we do not possess subject matter jurisdiction because GEICO lacks standing for failure to prove an actionable injury. The panel did not address this jurisdictional concern, and properly so. A litigant's standing is normally evaluated on the pleadings. Gladstone, Realtors v. Bellwood, 441 U.S. 91, 109-16, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). GEICO contends its injury stems from the possibility of having to honor a policy no longer in force due to the insured's breach. Only after a court has determined that there is, in fact, a valid contract at issue can it reach any questions of contractual obligation. Thus, to have standing to proceed, GEICO only had to allege it was threatened with injury by virtue of being held to an invalid policy. See Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273-74, 61 S.Ct. 510, 512-13, 85 L.Ed. 826 (1941). Indeed, we have consistently held that a dispute between an insurer and its insureds over the duties imposed by an insurance contract satisfies Article III's case and controversy requirement. American Nat'l Fire Ins. v. Hungerford, 53 F.3d 1012, 1015-16 (9th Cir.1995); American States Ins. Co. v. Kearns, 15 F.3d 142, 144 (9th Cir.1994)
 
 
 [3]
 Section 1367(c) provides that:
 The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-
 (1) the claim raises a novel or complex issue of State law,
 (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
 (3) the district court has dismissed all claims over which it has original jurisdiction, or
 (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
 
 
 [4]
 We, of course, retain the power to raise the issue sua sponte, however, should the extraordinary circumstances of a case so demand. See, e.g., Jackson v. Culinary Sch. of Wash., Ltd., 59 F.3d 254 (D.C.Cir.1995)(complex and important state law questions of first impression); Nationwide Mutual Fire Ins. Co. v. Willenbrink, 924 F.2d 104 (6th Cir.1991) (pending state action involving identical parties and coverage issues). In those rare cases when such an exceptional inquiry might be warranted, and the judicial concerns of comity and federalism loom so large that examination cannot be avoided, the proper procedure is for the appellate panel to remand the question to the district court to permit its consideration "in the first instance." Wilton, 515 U.S. at 289, 115 S.Ct. at 2144; See also Jackson, 59 F.3d at 256; Nationwide, 924 F.2d at 105. Such exceptional conditions are not presented by cases such as the one at bar where the state action has been terminated and involved different issues from the federal action. Either circumstance should caution against sua sponte appellate intervention
 
 
 [5]
 The Brillhart factors are not exhaustive. We have suggested other considerations, such as "whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies." Kearns, 15 F.3d at 145 (J. Garth, concurring)
 
 
 [6]
 Because claims of bad faith, breach of contract, breach of fiduciary duty and rescission provide an independent basis for federal diversity jurisdiction, the district court is without discretion to remand or decline to entertain these causes of action. Indeed, the district court has a "virtually unflagging" obligation to exercise jurisdiction over these claims. First State Ins. Co. v. Callan Assoc., 113 F.3d 161, 163 (9th Cir.1997)
 
 
 [7]
 The dissent argues that the doctrines of comity and federalism require sua sponte examination of abstention issues on appeal. While the federal courts have undisputed power to consider the necessity of abstention in the declaratory judgment context, see Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), we believe these important doctrines are better raised and examined at the district court level. See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, ----, 116 S.Ct. 1712, 1722, 135 L.Ed.2d 1 (1996) (noting that the applicability of the abstention doctrine to a declaratory judgment case is committed to the trial court's discretion under Wilton.) None of the general abstention cases cited by the dissent impose a sua sponte obligation to review an exercise of the district court's authority. Moreover, "principles of comity and federalism do not require that a federal court abandon jurisdiction it has properly acquired simply because a similar suit is later filed in a state court." Town of Lockport, N.Y. v. Citizens for Community Action at the Local Level, Inc., 430 U.S. 259, 264 n. 8, 97 S.Ct. 1047, 1051 n. 8, 51 L.Ed.2d 313 (1977) (emphasis added)
 
 
 [1]
 The GEICO policy provided in relevant part as follows:
 LOSSES WE PAY
 We will pay damages an insured is legally entitled to recover for bodily injury caused by an accident and arising out of the ownership, maintenance or use of an underinsured motor vehicle. However, we will not pay until the total of all bodily injury liability insurance available has been exhausted by payment of judgments or settlements.
 
 
 [2]
 Congress enacted § 1367 primarily as a response to the Supreme Court's decision in Finley v. United States, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). In Finley, the Court declined to apply the doctrine of pendent party jurisdiction without express congressional authorization. Id