**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| EXXON MOBIL CORPORATION, a New Jersey corporation,<br><br>        Plaintiff- cross-defendant - Appellant,<br><br>  v.<br><br>NEW WEST PETROLEUM, LP, a California limited partnership; et al.,<br><br>        Defendants-cross-claimants - Appellees,<br><br>  and<br><br>SARTAJ SINGH BAINS,<br><br>        Third-party-defendant-counter-claimant - Appellee. | No. 08-17651<br><br>D.C. No. 2:03-cv-02222-WBS-EFB<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, District Judge, Presiding

Argued and Submitted February 8, 2010
San Francisco, California

---

     [*]   This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: GOODWIN, BERZON and IKUTA, Circuit Judges.

The Purchase & Sale Agreement generally makes Exxon Mobil Corporation ("ExxonMobil") responsible for contamination caused by ExxonMobil's operations. *See generally* Purchase & Sale Agreement Sections 12, 19. Relevant here, Section 11(b) of the Purchase & Sale Agreement provides that if the applicable governmental authority requires further assessments and remediation of petroleum hydrocarbons, as it did in this case, and such petroleum hydrocarbons were caused by ExxonMobil's operations, then (1) the Baseline Condition of the Property is modified based on the results of such assessments; and (2) ExxonMobil is responsible for addressing the modified Baseline Condition pursuant to Section 12. Contrary to ExxonMobil's argument, New West's agreement in Section 18 of the Agreement to "hold harmless" ExxonMobil for specified issues does not allow ExxonMobil to sue New West for indemnity for contamination caused by ExxonMobil's prior operations. *See Queen Villas Homeowners Ass'n v. TCB Prop. Mgmt.*, 56 Cal. Rptr. 3d 528, 534 (Cal. Ct. App. 2007). Accordingly, the district court correctly determined that under the Purchase & Sale Agreement, ExxonMobil agreed to take responsibility for the costs of remediating the contamination at issue, provided that it was caused by ExxonMobil's operations.

-2-

The district court did not clearly err in finding that ExxonMobil failed to prove, by a preponderance of the evidence, that the reported increases in contamination were not caused by ExxonMobil's operations prior to the Closing Date. This finding was supported by evidence that the MtBE concentrations increased while the Northgate station was closed for upgrades, that the subsequent lessees of the Northgate Property took substantial measures to prevent and detect releases, and that no post-Closing Date MtBE release of the magnitude necessary to produce the reported results was detected. While ExxonMobil presented evidence to the contrary, the district court's finding is "plausible in light of the record viewed in its entirety." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (quotation marks omitted). In light of this factual finding, the district court correctly concluded that ExxonMobil was responsible for the contamination at issue under the Purchase & Sale Agreement. Because this conclusion was not clearly erroneous, the district court's decision on damages was also not clear error.

Finally, the district court did not abuse its discretion in refusing to grant ExxonMobil declaratory judgment. *See Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). The district court was not required to entertain the declaratory judgment claim, *see Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220,

1223 (9th Cir. 1998) (en banc), and the court's conclusion that its decision on the breach of contract claim resolved the declaratory relief claim is consonant with our direction that district courts may refuse to exercise their discretion where the declaratory action will not "serve a useful purpose in clarifying the legal relations at issue," *id.* at 1225 n.5.

**AFFIRMED.**